**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roy BOTTOSON a/k/a Linroy Bottoson,
Defendant-Appellant.**

**No. 80–5814
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.
Unit B

May 15, 1981.

Linroy Bottoson, pro se.

Robert A. Leventhal, Orlando, Fla., for plaintiff-appellee.

Before RONEY, FRANK M. JOHNSON, Jr., and HENDERSON, Circuit Judges.

PER CURIAM:

In February 1980, appellant was convicted on two counts of violating Title 18, United States Code, Sections 922(a)(6); 922(h)(1); and 924(a) (making false statements in order to purchase a firearm). In March 1980, appellant was convicted for violations of Title 18, United States Code, Section 641 (transferring United States Postal Service money orders known to be stolen). Following these convictions no appeal was taken. However, on May 20, 1980, appellant Bottoson mailed the clerk of the district court a document that the court treated as a motion under Title 28, United States Code, Section 2255. The district court in a memorandum opinion found that Bottoson was arrested at his residence on the evening of October 29, 1979, without an arrest warrant. The court found further that on October 26, 1979, a robbery occurred at the Eatonville Post Office in Eatonville, Florida, and that during the course of the robbery postal money orders were stolen from the post office. As an incident to the robbery, the postmistress was kidnapped. On October 29, 1979, prior to the defendant's arrest, defendant's wife presented to the Exchange Bank of Kissimmee in Kissimmee, Florida, a postal money order for deposit to a checking account belonging to her and the defendant. The amount of the postal money order was $400. The defendant's wife attempted to split the deposit by taking $161 in cash and leaving $239 in the account. A bank employee advised Mrs. Bottoson that the entire deposit would have to be held for fourteen days in order for the bank to receive funds from the postal money order because the account was then overdrawn. Mrs. Bottoson agreed and the deposit was processed through banking channels. Shortly after the deposit was made, a person called the bank, identified himself as Roy Bottoson, and requested that the money order be returned to him. The money order was one of a series of money orders which had been stolen on October 26, 1979. An investigation revealed that no $400 postal money orders had been sold to the public on the day of the robbery, but the postal money order machine when examined after the robbery was set on the figure "$400." The district court further found that after receiving this information the postal inspector, C. R. Netherton, appeared before the Magistrate of the United States District Court on October 29, 1979, for the issuance of an arrest warrant for defendant Bottoson's arrest. Based on the presentation of the foregoing information, the Magistrate found probable cause existed for the issuance of a warrant, but through inadvertency the warrant for the arrest of Bottoson was never issued. However, Inspector Netherton caused Bottoson to be arrested by other postal inspectors at Bottoson's residence later in the day on October 29, 1979. At the time of Bottoson's arrest no search of his residence was conducted; nor was any evidence obtained pursuant to the arrest.

Based on these facts, the trial court found that *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639, was not applicable in this case because the *Payton* case does not preclude arrest without a warrant when there is probable cause accompanied by exigent circumstances which justify the arrest. The district court found further that in the present case there were highly exigent circumstances because of the fact that, as an incident to the post office robbery, the postmistress had been kidnapped and was unaccounted for at the time of the arrest. Furthermore, the district court found that *Payton* was issued on April 15, 1980, subsequent to all of the aforementioned trials. The district court held that *Payton* had no retroactive application to a trial taking place prior to the date of its issuance. Finally, the district court concluded that the arrest of Bottoson based on probable cause at his residence was in accordance with the constitutional norms prior to the *Payton* opinion and in fact was expressly authorized by federal statute. 18 U.S.C. § 3061.

Appellant's contention that he may neither be imprisoned nor be prose-

cuted because the officers who arrested him in his home did not have a warrant is erroneous. If the contention has merit, the remedy available is a new trial. *See United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980). This Court has not yet decided whether *Payton v. New York* mandates a new trial for all persons subjected to a warrantless arrest in their homes before April 15, 1980, the date of the *Payton* decision. However, it is not necessary in this case to reach this issue because the district judge found that the officers who arrested appellant were faced with exigent circumstances which justified the arrest. This Court finds that the district court's determination on this point is not clearly erroneous. *United States v. Turner,* 628 F.2d 461, 465 (5th Cir. 1980). In this instance the arresting officers had probable cause to believe that appellant committed robbery and kidnapping. Appellant's wife passed the money order which was recently stolen in a post office robbery committed by an armed man. A man later called the bank stating that he was the appellant and tried to retrieve the stolen money order. The abducted postmistress was missing at the time of the arrest.[1] The police entered peacefully and arrested appellant. These facts establish appellant's identity, possible armament, urgent need to find the abductee, and acts reflecting suspicion on the part of a suspect that the money order could lead to his arrest. The finding of exigent circumstances by the district court is not clearly erroneous.

■ The only other issue presented in this case is based upon a supplemental paper filed with the Court titled "DEFENDANT'S COMPLAINT AGAINST A DISTRICT COURT JUDGE." The "complaint" requests relief in the form of mandamus and the following is a verbatim recitation of the pertinent part:

... This defendant (appellant) is accused of murder in the state of Florida, this defendant goes to a church which believes in the raising of the dead, which is the defendants right under the Consti-

tution of the United States. This defendant wrote a letter to District Court Judge John Reed, Jr. in Orlando stating his religious belief that if the body of the deceased were to be taken from the ground and brought into the defendants church the Lord of life would bring back the deceased. Judge Reed made the statement "the only thing he would do with the request or (letter) would be to file it away." The defendant feels his "Religious Freedom" under the constitution were violated, anyone has the right to his/her own belief under Freedom of Religion. Defendant now asks this court to uphold his rights under the constitution of the United States.

Appellant's original letter regarding this point that was addressed to the district judge was filed by the judge as a part of the court record. The trial judge took no action to ensure that appellant would have access to the body of the postmistress so that appellant, through the intervention of a divine being, could resurrect her. Instead he issued an order requiring a mental examination of appellant. We consider this request for mandamus to be frivolous as it has no substantive merit. *See Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967). Furthermore, the death of the victim-postmistress was not the subject of Bottoson's federal prosecution, but instead relates to state charges filed against him.

Accordingly, the order of the district court in denying relief under 28 U.S.C. § 2255 is AFFIRMED.

The petition for mandamus is DISMISSED as provided by 28 U.S.C. § 1915(d) and Local Rule 20.

---

1. The postmistress was later found dead.